IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JOHN ERIC MERRY,**                     Case Number 5:13cv1374

     Petitioner,                      Judge Lesley Wells

            v.                      Magistrate Judge James R. Knepp, II

**CHRISTOPHER LaROSE,**

     Respondent.                      REPORT AND RECOMMENDATION

### INTRODUCTION

*Pro se* Petitioner John Eric Merry, a prisoner in state custody, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Christopher LaRose, warden, filed a Return of Writ (Doc. 9) with attached exhibits. Petitioner did not reply. The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Doc. 5). For the reasons discussed below, the undersigned recommends the Petition be dismissed.

### FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings were erroneous. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state

court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. Ohio's Fifth

District Court of Appeals set forth the following findings of fact:

> On April 30, 2010, sometime after 11:00 p.m., Courtney Lamp appeared at the home of Michael Wolfe. Wolfe had known Lamp for several years and they dated briefly. At one point in their relationship, Lamp told Wolfe she was pregnant but it "probably wasn't his." They spoke from time to time and Lamp had shown him pictures of her baby. Wolfe also knew Lamp was in an on and off relationship with appellant.

> ### The Assault
> As of April 30, 2010, Wolfe and Lamp hadn't spoken for a few weeks, but Lamp texted Wolfe and asked if she could come over. Lamp mentioned she was coming from a party at appellant's house.

> Lamp arrived and they both had a few beers. In the meantime, Wolfe's brother and his girlfriend, who were also staying at the house, went out for the evening. Wolfe and Lamp were alone in the house. According to Wolfe, they "got physical" and then fell asleep in his bed.

> Around 2:30 a.m., they were awakened by the sound of a loud vehicle in the drive. Wolfe came downstairs and opened his front door to find appellant and two friends of his. Appellant said he wanted to see Lamp right now. Wolfe shut and locked the door, and yelled up the stairs to Lamp that appellant was outside. She said she didn't want to see him.

> Appellant and his two friends started beating on the front door. Lamp told Wolfe she needed to go outside because she was afraid appellant might take things out of her car and she had left it unlocked. Wolfe and Lamp dressed, came downstairs, and went outside. Wolfe was wearing jeans, a hat, and flip-flop sandals.

> According to Wolfe, appellant seemed upset. He had opened the glass front door and said to Lamp, "You [expletive] him already?" Lamp replied that it was none of his business. Appellant then asked Wolfe if he'd had sex with Lamp, and Wolfe didn't answer. At some point, appellant shook Wolfe's hand and made a comment to the effect of, "Congratulations, you can have her."

> Lamp headed toward her car and appellant walked after her. Wolfe saw appellant with his finger in Lamp's face, screaming and cursing. Lamp was crying. At one point, Wolfe saw appellant grab Lamp by the arm and "yank" her. Lamp tried to pull away but appellant grabbed her by her shirt, pulled his fist back, and said, "Your ass is mine, bitch."

> Wolfe yelled at appellant to stop and to leave because the police were coming. Appellant let Lamp go, and she ran back toward the house. As Wolfe walked past

appellant, appellant spun around and struck him in the face. Wolfe believed he had been struck with an object. Blood gushed all over his face and he couldn't see. Appellant then struck Wolfe in the face a second time.

Wolfe fell to his knees and appellant choked him from behind. Appellant continued to punch Wolfe and to throw him against the cars parked in Wolfe's driveway. A headlight was broken. Appellant repeatedly kicked Wolfe in the head.

In the meantime, Lamp had gone back into the house to try to awaken Wolfe's brother and get him to intervene. Eventually someone did call 911 from inside the house.

Appellant's friends wanted to leave but appellant said he wasn't done yet. Wolfe was in his underwear at this point because his pants had fallen off. Wolfe was still being hit and kicked, and he thought appellant's friends joined in although he couldn't tell which one. Eventually appellant and his two friends got into a car and took off.

### Wolfe's Injuries
Lamp accompanied Wolfe to Affinity Hospital that night and they talked to investigators. Wolfe was unable to see or to write, so Lamp wrote out his statement for him and he signed it. Wolfe learned that his orbital bone and some teeth were broken. His eye was shut for a week and a half, and he experienced lasting numbness in his face. He still has a scar on his head.

### Lamp Invokes her Right to Remain Silent
Courtney Lamp testified at trial and dissimulated. Although she corroborated the basic facts of Wolfe's story in terms of going to Wolfe's house, appellant showing up, the conversation that took place, and the fact that appellant was upset, she minimized everything that occurred. She claimed not to know who started the fight; she didn't remember anything she told police about the incident; she has no independent memory of appellant threatening her and only wrote it down in her statement because Wolfe told her about it. She claimed not to remember anything about the night of the assault, but ultimately admitted that she saw appellant strike Wolfe many times, in the arms, shoulders, and head. She denied that any act of domestic violence occurred and denied that she tried to get away from appellant. She implied Wolfe started the altercation by approaching appellant in a "loud, angry" manner.

An issue arose during Lamp's testimony about inconsistencies between her trial testimony and her grand jury testimony. When confronted with her grand jury testimony, Lamp remembered she told the grand jury appellant pulled his fist back and told her "Your ass is mine" and appellant dragged her around the side of the house. She agreed she told the grand jury appellant came after Wolfe, and

3

appellant hit Wolfe in the face with a rock. Lamp denied, however, that she ever told Wolfe her baby was his.

The trial court declared Lamp a court's witness and appointed counsel for her. Outside of the presence of the jury, Lamp's counsel advised she invoked her 5th Amendment right to remain silent. When the jury returned to the courtroom, the trial court advised the jury of Lamp's invocation of her right to remain silent and her testimony ended.

### *The Defense Case*

Appellant's two friends who were with him the night of the assault testified as defense witnesses. David Ramsey claimed to only "vaguely" remember the fight. Nicholas Sampsel stated that the three went to Wolfe's house because appellant wanted to confront Lamp. Sampsel then claimed he didn't know how the fight started because he wasn't focused on it and he had no idea how Wolfe was injured.

Appellant testified on his own behalf. He referred to Lamp as his "fiancée," despite the fact that he claimed he had not seen her or talked to her since the incident occurred. Appellant minimized the fight and his role in it, repeatedly claiming Wolfe came toward him "in an aggressive manner." He claimed he wasn't able to get away from Wolfe and that Wolfe had in fact hurt him.

On cross examination, appellant admitted he has two prior convictions for felonious assault and two prior convictions for domestic violence. He denied he was upset when he saw Lamp's car in Wolfe's driveway, and claimed he came to the house only because he wanted to find out what was going on. He had no idea how Wolfe's orbital bone was broken and denied hitting Wolfe in the head.

Wolfe had earlier testified that he saw appellant and Lamp together at Clay's Park with the baby, after the indictment but before trial. Appellant and Lamp denied this. Appellee's sole rebuttal witness was an individual who knew both appellant and Wolfe. This witness saw Lamp and appellant together with a baby at Clay's Park in July, after the assault and before the trial.

Appellant was found guilty of the charge of felonious assault and not guilty of the charge of domestic violence. The jury made the specific finding that appellant did not cause physical harm by means of a deadly weapon but did cause serious physical harm to Wolfe.

The trial court sentenced appellant to a prison term of 7 years, noting his history of assaultive behavior and his angry, violent nature, in addition to the extent of Wolfe's injuries.

(Ex. 1, Doc. 9).

**PROCEDURAL BACKGROUND**

***State Court Conviction***

Petitioner was indicted by the April 2011 Stark County Grand Jury for one count of felonious assault under Ohio Rev. Code § 2903.11(A)(1) and one count of domestic violence under Rev. Code. § 2919.25(A). (Ex. 2, Doc. 9). At trial, Petitioner testified on his own behalf. (Ex. 4, Doc. 9). The jury found Petitioner guilty of felonious assault and not guilty of domestic violence. (Ex. 4, Doc. 9). A sentencing hearing was conducted on August 24, 2011, at which time Petitioner, accompanied by defense counsel, was sentenced to a term of seven years imprisonment and a mandatory term of three years post-release control. (Ex. 5, Doc. 9, at 3).

***Direct Appeal***

On September 16, 2011, Petitioner, through new counsel, filed a timely direct appeal from the judgment of conviction. (Ex. 9, Doc. 9). Petitioner presented two assignments of error:

> I. The evidence is insufficient to sustain the conviction and the verdict is against the manifest weight of evidence.

> II. The appellant was denied his rights to effective assistance of counsel.

(Ex. 11, Doc. 9, at 2). Petitioner's first assignment of error was based on his claim he acted in self-defense. (Ex. 11, Doc. 9, at 10-12, Ex. 1, at 3). In arguing the second assignment of error, Petitioner claimed that trial counsel was ineffective by: 1) failing to object to hearsay evidence presented by the prosecution; 2) failing to review the grand jury transcript testimony of state witness Courtney Lamp; 3) failing to question Petitioner about his prior criminal record when Petitioner took the stand in his own defense, thereby permitting the state to first question

5

Petitioner about the prior record during cross-examination; and, 4) failing to object to witness Wolfe's testimony of "it's ridiculous, you're on parole for this," when speaking of Petitioner. (Ex. 11, Doc. 9, at 14; Ex. 1, Doc. 9, at 4-6). The state filed an appellee brief on January 30, 2012. (Ex. 12, Doc. 9).

On June 22, 2012, the Fifth District Court of Appeals affirmed the trial court's judgment. (Exs. 1, 13, Doc. 9). The time for filing an appeal expired 45 days later, on August 6, 2012. *See* Ohio S.Ct.Prac.R. 7.01(A)(1)(a). However, on September 28, 2012, Petitioner filed a *pro se* notice of appeal and motion for leave to file delayed appeal in the Ohio Supreme Court pursuant to S.Ct.Prac.R. 7.01(A)(4). (Exs. 14-16, Doc. 9). In his motion, Petitioner asserted the following proposition of law:

> Evidence is insufficient for a jury to find reversible error and/or remand for a new trial when the manifested weight is contrary to clearly established federal law and abuse of discretion of the appellate court justices warranting Supreme Court review in violation of both Constitutions Fifth and Fourteenth Amendments due process rights.

(Ex. 16, Doc. 9, at 7).

On November 28, 2012, the Ohio Supreme Court denied Petitioner's leave to file a delayed appeal and dismissed the cause. (Ex. 17, Doc. 9).

***Post-Conviction Relief***

On March 20, 2013, Petitioner filed a *pro se* petition for post-conviction relief pursuant to Rev. Code § 2953.21. (Ex. 18, Doc. 9). Petitioner presented one claim in the petition:

> Petitioner was denied the Sixth Amendment right to the effective assistance of counsel where that resulted in inadequate advice concerning the rights and consequences of going to trial as opposed to taking a plea, causing him to reject the plea offer.

(Ex. 18, Doc. 9, at 6).

The state filed a response (Ex. 19, Doc. 9) and on June 24, 2013, the trial court denied the petition "for the reasons set forth in the response filed by the State of Ohio". (Ex. 20, Doc. 9). There was no appeal from this judgment.

### Applications to Reopen Direct Appeal

Petitioner filed essentially identical applications to reopen appeal, the first being filed on September 21, 2012, and the second on September 25, 2012. (Exs. 21, 22, Doc. 9). The only difference between the two applications was the earlier filing contained Petitioner's affidavit as an exhibit, while the later application did not contain an affidavit. (*Id.*). In the applications, Petitioner raised the following assignment of error:

> Appellate Counsel failed to appeal ineffective assistance of trial counsel for the specified issues below, violating appellant's rights under Amend. V, VI and XIV of U.S. Const. and Art. I, Sect. 2, 5, 9, and 16 of the Ohio Const.
>
> * * *
>
> A. Appellate counsel did not raise the issue that trial counsel was ineffective for failing to petition the court to give instructions on the lesser included offense of aggravated assault. . . .
>
> B. Trial counsel was ineffective as he failed to investigate matters critical to the case. Defense counsel did not request any prior medical or psychiatric records for Wolfe or Merry. . . .
>
> C. Appellate counsel failed to appeal the issue of the trial court's abuse of discretion by claiming a prosecution witness as a court's witness[.] Trial court acted as an advocate for the State's witness by stopping her testimony after it had been determined to be false and not at the beginning of the her testimony. . . .
>
> D. Trial counsel did not advise Merry properly in the pretrial stages of the prosecution. . . . Failure to provide reasonable counsel on plea agreements, especially with the refusal to request a lesser included offense charge, cannot be considered in the best interests of his client, reasonable representation, or effective assistance of counsel as guaranteed by the U.S. and Ohio Constitutions.
>
> E. Trial counsel erred in not affording the Defendant to speak on his own behalf at his sentencing to mitigate his sentence.

(Exs. 21, 22, at 6-9, Doc. 9). The state filed a motion in opposition (Ex. 23, Doc. 9) and Petitioner replied (Doc. 24, Doc. 9).

On December 13, 2012, the appeals court denied the application, because Petitioner failed to establish good cause for the untimely application under App.R. 26(B); had not shown counsel was ineffective by not requesting a jury instruction on aggravated assault or by not assigning as error the trial court's decision to call a "state's witness" as a court's witness; and also, Petitioner's "claims that trial counsel 'failed to investigate matters critical to the case,' did not advise him properly regarding a plea offer, and erred in advising him not to speak on his own behalf at sentencing" were not evidenced in the record and were therefore not appropriate grounds for reopening his direct appeal. (Ex. 25, Doc. 9, at 3-6).

Instead of filing an appeal to the Ohio Supreme Court from the denial of the application, Petitioner, on January 7, 2013, filed an untimely *pro se* motion for reconsideration of the denial of his application to reopen his appeal pursuant to App.R.26(B). (Ex. 26, Doc. 9). On February 28, 2013, the state appeals court denied the motion as untimely, additionally finding that Petitioner "points to no such obvious errors but instead re-argues the position advanced in his original application to reopen." (Ex. 27, Doc. 9). There was no appeal from that judgment.

On May 16, 2013, Petitioner filed a *pro se* motion requesting the appellate court issue proper notice or perfect service of the appellate court's judgments rendered in the case. (Ex. 28, Doc. 9). The court of appeals denied the motion on June 13, 2013, finding Petitioner did receive proper notice when the court sent the judgments to counsel. (Ex. 29, Doc. 9). The court added, "while it is true that we noted appellant's untimely application in our decision denying his application to reopen, the application was also denied on the merits." *Id*. There was no appeal from this judgment.

## FEDERAL HABEAS CORPUS

Petitioner provided the instant *pro se* Petition for writ of habeas corpus to the prison for

mailing on June 18, 2013. (Doc. 1, at 15). There, he raised the following grounds for relief:

**Ground One:** Instruction on lesser-included offense to jury.

*Supporting facts*: If under any reasonable view of the evidence it is possible for
the trier of fact to find the defendant not guilty of the greater offense and guilty of
the lesser offense, the instruction on the lesser included offence must be given.

**Ground Two**: Violation of Evid. R. 614.

*Supporting facts*: The purpose of Evid. R. 614 is to provide equity to both the
State and the accused in the access and interrogation of witnesses. The trial court
clearly erred to prejudice of the defense and to the favor of the State by calling
Ms. Lamp as a State's witness. The reason trial court called Ms. Lamp as a court's
witness was due to her committing perjury, which would have discredited her as a
witness for the State and favored me at trial. This was not a proper utilization of
this Rule and did not provide defense an opportunity to examine the witness, as
the rule requires.

**Ground Three:** Failure by the State to prove all of the elements of the crime
contained in the indictment.

*Supporting facts*: In the Bill of Particulars it said "and" used a rock causing
serious physical harm when I was found not guilty of using a rock the State failed
to prove all elements of the "crime" and they did not prove "serious physical
injury" Wolfe the "victim" his injury was without any limitation in physical
function or incapacity, prolonged or intractable pain, or significant or serious
disfigurement & needed not follow up treatment.

**Ground Four:** Failure by appellate counsel to argue IAC of trial counsel for
failure to request self-defense instruction while acting in defense of another.

*Supporting facts*: I didn't know if Mike was coming at me or my at the time
fiancé & the mother of my child Courtney.

(Doc. 1, at 5, 7, 8, 10).

## JURISDICTIONAL ISSUES

9

Before seeking a federal writ of habeas corpus, a petitioner must exhaust available state remedies, "thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." 28 U.S.C. § 2254(b)(1)(A); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275 (1971)). To exhaust the available state remedies, a petitioner must "invok[e] one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Ohio, this includes direct and delayed appeal to the Ohio Court of Appeals and the Ohio Supreme Court. *Macky v. Koloski*, 413 F.2d 1019 (6th Cir. 1969); *Allen v. Perini*, 424 F.2d 134, 140 (6th Cir. 1970). In order to fairly present habeas claims to the state courts, such claims must be presented at the first available opportunity. *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994). If a petitioner fails to present a claim to the state courts and no state remedy remains available, he has procedurally defaulted that claim. *See Gray v. Netherland*, 518 U.S. 152, 161–62 (1996); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

Further, the doctrine of procedural default bars federal habeas courts from reviewing federal claims state courts declined to address due to a petitioner's failure to comply with state procedural requirements. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). Procedural default occurs when the last state court rendering a decision makes a "plain statement" basing its judgment on a procedural bar. *Harris v. Reed*, 489 U.S. 255, 265 (1989). "The mere existence of a basis for a state procedural bar does not deprive [federal courts] of jurisdiction; the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir. 2003) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)); *see also Coleman v. Thompson*, 501 U.S. 722, 735 (1991) (holding the last state court rendering a reasoned judgment must "clearly and expressly" state its judgment rests on a

procedural bar for procedural default to apply). Where a state court is silent as to its reason for denying a claim, the Sixth Circuit applies a presumption that the state court "would not have ignored its own procedural rules and would have enforced the procedural bar." *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996) (declining to interpret the state appellate court's silence as a decision on the merits of the petitioner's due process claim and instead assuming the court was enforcing the procedural bar).

The Sixth Circuit applies a four-part test to determine whether a petitioner's grounds for relief are procedurally defaulted:

> 1) whether the petitioner failed to comply with an applicable state procedural rule;
>
> 2) whether the state courts actually enforced the state procedural sanction;
>
> 3) whether the procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review;
>
> 4) if the above are met, whether the petitioner has demonstrated "cause" and "prejudice".

*Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). As further explained below, each of Petitioner's four grounds for relief is procedurally defaulted and he has not shown cause or prejudice; therefore, each should be dismissed.

***Grounds One, Two, and Four***

Petitioner's first ground for relief pertains to the absence of a lesser included offense in the jury instructions. (Doc. 1, at 5). His second ground for relief asserts the trial court erred by calling Ms. Lamp as the state's witness. (Doc. 1, at 7). His fourth ground for relief claims ineffective assistance of appellate counsel for the failure to argue ineffective assistance of trial counsel related to the lack of a self-defense jury instruction at trial. (Doc. 1, at 10). Petitioner

11

failed to raise each claim on direct appeal, applications to reopen, or petitions for post-conviction relief in state court.

In Ohio, *res judicata* bars from subsequent state proceedings claims which could have been presented on direct appeal or in post-conviction proceedings, but were not. *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000) (citing *State v. Perry*, 226 N.E.2d 104 (Ohio 2009)); *see also*, *Scuba v. Brigano*, 527 F.3d 479, 486-97 (6th Cir. 2007). *Res judicata* has been recognized by the Sixth Circuit as an adequate and independent basis for procedural default. *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004). Because no state remedy remains available, Petitioner has procedurally defaulted the claims. *See Gray*, 518 U.S. at 161–62; *Anderson*, 460 F.3d at 806 ("Thus, if an Ohio Petitioner failed to raise a claim on direct appeal, which could have been raised on direct appeal, the claim is procedurally defaulted.").

It should be noted, grounds one and two were raised in Petitioner's application to reopen within the context of an ineffective assistance of counsel claim, unlike the way they are presented in the instant Petition. For purposes of evaluating whether a claim is procedurally defaulted, the claims as raised in the application to reopen are considered distinct from those raised in the Petition. *Lott v. Coyle*, 261 F.3d 594, 617 (6th Cir. 2001). Moreover, any claim raised in the application to reopen is procedurally defaulted under *Maupin*. This is because, in short, the Fifth District denied the application as untimely under App.R. 26(B), which has been held to be an adequate and independent state ground on which to foreclose federal review. *Scuba v. Brigano*, 527 F.3d 479, 488-89 (6th Cir. 2007); (Ex. 25, Doc. 9, at 3-6).

Accordingly, grounds one, two, and four should be dismissed as procedurally defaulted unless Petitioner can show cause and prejudice.

***Ground Three***

In ground three, Petitioner argues the state failed to prove all elements of the crime contained in the indictment. (Doc. 1, at 8). He raised this claim on direct appeal and on delayed appeal to the Ohio Supreme Court. Respondent argues the claim is procedurally defaulted. Accordingly, application of the four-part *Maupin* test is necessary.

Concerning the first prong, Petitioner failed to comply with the 45-day time for appeal set forth in Ohio S.Ct.Prac.R. 7.01(A)(4). Indeed, the Fifth District Court of Appeals entered judgment on June 22, 2012. (Exs. 1, 13, Doc. 9). Under S.Ct.Prac.R. 7.01(A)(4), the time to appeal expired 45 days later – on August 6, 2012. However, Petitioner did not file notice of appeal in the Ohio Supreme Court until September 28, 2012. (Exs. 14-16, Doc. 9).

Turning to the second factor, the Ohio Supreme Court is presumed to have actually enforced the state procedural sanction when it denied Petitioner's leave to file a delayed appeal and dismissed the case. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) ("Thus, the applicable Ohio court rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not on the merits.").

Third, the Ohio Supreme Court's unexplained decision to deny a motion for leave to file a delayed appeal is an adequate and independent state law ground on which to bar federal review. *Id*.; *see also Dietz v. Money*, 391 F.3d 804, 809 (6th Cir. 2004) ("[F]ailure to file a timely appeal presumptively constitutes an adequate and independent ground barring federal review."). Therefore, Ground Three is properly dismissed as procedurally defaulted unless Petitioner can show cause and prejudice.

### *Cause and Prejudice*

A petitioner may overcome procedural default by showing both cause for the failure to comply with the state procedural rule and prejudice resulting from the alleged constitutional

violation. *See Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998). Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla*, 370 F.3d at 498 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires a petitioner to show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

In his Petition, Petitioner claims he did not exhaust grounds one, two, three, or four because he is "still waiting on proper notice from clerk of courts." (Doc. 1, at 5, 7, 8, 10). On its face, this cannot excuse procedural default as to grounds one, two, and four because those claims were never presented in state court. Therefore, any outstanding notice could not have affected Petitioner's ability to raise the claims in the first place. Moreover, the record demonstrates service was perfected on all claims when notification was sent to Petitioner's counsel. (*See, e.g.,* Ex. 29, Doc. 9). Last, Petitioner provided no surrounding facts or further information to support his assertions. Therefore, Petitioner's arguments regarding outstanding notice are not well-taken.

Next, in his delayed appeal to the Ohio Supreme Court, Petitioner argued he was prevented from filing on time because his counsel delayed in notifying him of the appellate court's judgment and the correctional institution unreasonably delayed in mailing his appeal to the Ohio Supreme Court. (Ex. 16, Doc. 9, at 3). Petitioner does not make this claim in his Petition nor has he replied to Respondent's argument that he did not exercise due diligence in pursuing an appeal. Upon review, Petitioner's arguments are not supported by the evidence.

To this end, Petitioner received a June 23, 2012 letter from counsel on July 11, 2012. *Id.*, at 15. The letter advised Petitioner the appellate court affirmed judgment against him and warned

him of upcoming appellate deadlines. *Id.*, at 13, 15. It was not until August 1, 2012, that Petitioner requested money from his prisoner's account to cover mailing costs. *Id.*, at 17-18. On August 3, 2012 (three days before the time to appeal expired), he got the money to the mail room for processing. *Id.* Even assuming there was delay on the part of prison officials, which the evidence does not support, the Court still cannot say there is "no doubt" the petition would have been timely had prison officials acted promptly. *Compare Donnal v. Sheets*, 2009 WL 3126404, at *3 (N.D. Ohio), *with Maples v. Stegall*, 340 F.3d 433 (6th Cir. 2003). Therefore, Petitioner has not demonstrated cause for his failure to comply with the 45-day time period to appeal.

### *Miscarriage of Justice*

Finally, Petitioner's procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Souter v. Jones*, 395 F.3d 577, 588-89 (6th Cir. 2005); *Schlup v. Delo*, 513 U.S. 298 (1995). To meet this standard, Petitioner would need to present new evidence of innocence that is so strong a reviewing court cannot have confidence in the outcome of the trial. *Schlup*, 513 U.S. at 327. New evidence may be "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Id.* at 324.

Here, Petitioner has not claimed innocence or presented any evidence to show he was "actually innocent". *Id.*; *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006). Therefore, his procedural default is not excused under the fundamental miscarriage of justice exception.

### CONCLUSION AND RECOMMENDATION

Following review, the undersigned recommends the Court find Petitioner's claims procedurally defaulted and dismiss the Petition. (Doc. 1).

 s/James R. Knepp, II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).